UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x

Yanki Tshering,

                         Plaintiff,

           - against -

FAIRFIELD FINANCIAL MORTGAGE
GROUP, INC. AND SHAW MORTGAGE GROUP,
INC.

                       Defendants.

----------------------------------------------------------------- x



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   JUL 1 1 2008   ★

BROOKLYN OFFICE

08 2777

**COMPLAINT**

**JURY TRIAL
DEMANDED
ECF CASE**

JOHNSON, J

LEVY, M.J.

        Plaintiff Yanki Tshering, by her attorney, Robert E. Brown, P.C., for her complaint alleges upon knowledge as to herself and her own actions, and upon information and belief as to all other matters, as follows:

### THE PARTIES

        1.    Yanki Tshering ("Yanki") is an individual who at all times relevant hereto resided and currently resides at 343 14th Street, Brooklyn, New York (the "Property"). Yanki is a "Consumer" as defined by 15 U.S.C. §1602(h) and a "debtor" at the pertinent times for application of the credit transaction.

2. Defendant Fairfield Financial Mortgage Group, Inc. ("Fairfield") is, upon information and belief, a Connecticut corporation with offices at 2 National Place, Danbury, Connecticut 06810 authorized to engage in the mortgage lending business in the State of New York. Fairfield is the lender under an adjustable rate note dated July 21, 2006 assigned loan number 40056716 ("Note") and $960,000.00 mortgage dated July 21, 2006 ("Mortgage"). Fairfield is engaged in lending and/or servicing federally-related mortgage loan transactions, such as the one at issue in this suit.

3. Defendant Shaw Mortgage Group, Inc. ("Shaw") is, upon information and belief, a domestic corporation with offices at 1118 RexCorp Plaza, Uniondale, N.Y. 11556. Upon information and belief, Shaw is the mortgage broker of the Mortgage originated by Fairfield. Shaw is engaged in brokering federally-related mortgage loan transactions, such as the one at issue in this suit.

4. Defendants John Does 1-10 are persons or entities unknown to Yanki who participated in the fraudulent and illegal transaction complained of herein and materially benefited from them. Defendants John Does 1-10 claim some right, title, estate, lien or interest in the Property adverse to Yanki's interest; and their claims, and each of them, constitute a cloud on Yanki's title to the Property. Upon information and belief, at all times mentioned herein each of the defendants was the agent, partner, co-conspirator, employee, or co-principal with each other, and that each acted jointly and in cooperation with each other to perform the acts against and inflict the damages upon Yanki as alleged in this Complaint, and that in doing the things alleged herein, each was acting within the course and scope of such relationship, and that the acts of each were ratified and adopted by the other.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case under 28 U.S.C. §1331, as this action arises under federal law.

6. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because multiple defendants are subject to jurisdiction in this district, a substantial number of the events giving rise to this action occurred in this district, and the underlying property subject to the mortgages at issue is located in this district.

## FACTUAL BACKGROUND

8. Yanki brings this action to obtain a judgment that the $960,000.00 Mortgage executed in favor of Fairfield violated federal law and was procured by fraud. Yanki's only substantial asset is the Property. Plaintiff is the victim of an integrated, wide-ranging real estate conspiracy, which includes repeated, brash and shocking predatory lending practices.

9. The federally related mortgage loan transaction at the root of this case was closed on or about July 21, 2006 ("Closing"), whereupon Yanki executed the Note and Mortgage to Fairfield covering the Property, which was then, and now remains, Yanki's permanent residence.

10. On July 21, 2006, Yanki was induced into executing a mortgage in favor of Defendant Fairfield for $960,000.00 bearing an initial "teaser" interest rate of 1%. The interest rate has since increased to 8%. Her initial monthly payment of principal, interest, taxes and insurance was $3,322.90. Her monthly payment has since increased to $7,692.69!

11. Before entering into the transaction with Defendants, Yanki's prior mortgages totaling $856,000.00 were commercially reasonable. Her prior first mortgage was in the amount of $665,000.00 with a 30-year fixed interest rate of 5.875%. Her prior second mortgage was in the amount of $192,444.00. At the time it had an adjustable interest rate of 7.75%. Since Yanki had outstanding credit and was nervous because her second mortgage was an adjustable rate and had just gone up, she sought to refinance her second mortgage and lower her monthly payment and interest rate ion her second mortgage only.

12. Yanki met Anthony Chin, a loan officer employed by Defendant Fairfield. Chin told Yanki he worked for Fairfield and provided her with his Fairfield business card. Specifically, Anthony Chin told Yanki that he could not refinance just her second mortgage and that she had to refinance both mortgages. Chin said he could arrange for refinancing of both mortgages and lower her monthly payment. Chin claimed that he had a special mortgage product for borrowers with excellent credit scores and a reliable payment history. This special product had a significantly reduced interest rate, and was only made available to those borrowers that needed a large mortgage but based on their credit scores and payment histories have shown that they have the ability to pay the required monthly payment. Chin said that Defendant Fairfield wanted to build long-term relationships with borrowers with large mortgages. Chin promised Yanki Defendant Fairfield would reduce her monthly payment by $829. Chin also told Yanki that her interest rate would be a fixed interest rate of 1% and that her monthly payment would be $3,000.00 and she could "cash out" $20,000.00. No one ever told Yanki that the initial "teaser" interest rate was adjustable. If she had known it was an adjustable rate mortgage, she would never have refinanced. The main reason why Yanki sought to refinance her second mortgage was to get out of an adjustable rate mortgage and into a fixed rate mortgage.

Case 1:08-cv-02777-SJ-RML   Document 1   Filed 07/11/08   Page 5 of 14 PageID #: 5

13. In the Fall of 2007, Yanki made a complaint about the conduct of the Defendants to the New York State Banking Department ("Banking Department"). In a letter dated January 8, 2008 to the Banking Department ("Fairfield's Response Letter"), Defendant Fairfield responded to Yanki's complaint. Fairfield's Response Letter was rife with inaccuracies. For instance, based on the information provided by Yanki, Defendant Fairfield knew or should have known that Yanki's annual income was $75,000.00 or $6,250.00 per month. After reviewing Fairfield's Response Letter, Yanki realized that the Uniform Residential Loan Application completed by Micalla Nunes, an employee of Defendant Fairfield, inflated her annual income to $204,000.00 or $17,000.00 per month. Defendant Fairfield used this information that it had fabricated to support its position in Fairfield's Response Letter to the Banking Department that Yanki "was earning close to 200,000.00 per year in base salary alone."

14. In Fairfield's Response Letter, Fairfield claimed that Mr. Chin "the loan officer involved in the transaction was a prior employee of Fairfield" who "must have given her his old business card to her (sic) from his previous employment with Fairfield." Thus, giving Yanki the impression that Fairfield was "the originator of the loan however it appears that Mr. Chin originated this loan while he was an employee of Shaw Mortgage and not Fairfield." Despite Fairfield's recent finger pointing at Chin and Shaw, Fairfield was inarguably the lender of the predatory loan to Yanki. Fairfield's underwriting department approved the loan with Shaw as the broker and Chin as the loan officer.

15. Yanki asked Chin if she should bring an attorney to the Closing. Chin urged her not to do so. Yanki did not receive any mortgage or disclosure documents prior to attending the Closing and was therefore unable to review them in advance. She learned of the terms of the Mortgage at the closing. In fact, she received the so-called "initial disclosures" dated July 3, 2006 weeks after the Closing.

16. Prior to and at the Closing, Yanki expressed some reservation to Chin about her ability to repay the loan and the amount of the fees. At the Closing, Yanki learned that the settlement costs totaled $65,512.38, including a broker fee to Defendant Shaw of $36,000.00. Instead of cashing out $20,000 as promised, Yanki was only going to receive $10,000.00. Chin repeatedly told Yanki that she had to pay such high "points" in order to get the excellent rate of 1%. When Yanki expressed her reluctance to close, Defendants agreed to give her a broker credit of $17,391.00. Yanki received absolutely no benefit from this outrageous broker fee.

17. Defendants convinced Yanki to go through with the Closing and refinance – clearly a move that did not make fiscal sense in light of the fact that the reduced closing costs were still more than $48,000.00. Defendants promised that if she closed they would help Yanki refinance at an even better rate with no closing costs. After the Closing, Yanki contacted the Defendants and attempted to refinance. She learned that the Defendants were unwilling to refinance the loan without closing costs.

18. Under the terms of the Mortgage, Yanki is currently obligated to pay $7,692.69 per month to satisfy her obligations to Defendant Fairfield -- almost 125% of her monthly income of $6,250.00

19. Yanki employed Consumer Guardian to audit the loan documents for violations of consumer protection laws and regulations. That audit revealed the following violations:

(a) No pre-disclosures were given prior to Closing;

(b) No pre-disclosures of yield spread premium were given;

(c) The Amount Financed in the Truth in Lending Disclosure statement was materially understated;

(d) The Annual Percentage Rate in the Truth in Lending Disclosure statement was materially overstated;

6

(e) No final Truth in Lending Disclosure statement was provided to Yanki;

(f) Yanki did not receive two of the Notice of Right to Cancel documents;

(g) Unjust enrichment of Defendant Shaw;

(h) Illegal kickback to Defendant Shaw due to the unreasonableness of the Yield Spread Premium;

(i) Defendant Shaw received an unreasonable broker's fee at Closing; and

(j) Plaintiff did not receive a copy of either the Note or Mortgage.

## COUNT ONE
### (TRUTH IN LENDING ACT)

20. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

21. Upon information and belief, Defendants are creditors within the meaning of and subject to the Federal Truth-in-Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and Regulation Z, 12 C.F.R. § 226 et seq.

22. Upon information and belief, in the course of the consumer credit transactions between Defendant Fairfield and Plaintiff, Defendants violated the disclosure requirements of TILA and Regulation Z by, *inter alia*:

    a.    failing to provide Plaintiff with notice of her statutory right to rescind the Mortgage in violation of 15 U.S.C. § 1635 (a); and

    b.    failing to provide Plaintiff with the disclosures required by Regulation Z § 226.4.

23. Because of the violations of the TILA and Regulation Z, Plaintiff has an extended right to rescind the Mortgage pursuant to 15 U.S.C. § 1635. This Complaint serves as written notice to Defendant Fairfield that Plaintiff is exercising her right to rescind the Mortgage pursuant to 15 U.S.C. § 1635.

24. As a proximate result of the aforementioned violations of TILA and Regulation Z, Defendants are liable for:

    a. rescission of the Mortgage, termination of any security interest created under the Mortgage, and return of any money or property given by Plaintiff to any person in connection with the Mortgage;

    b. actual damages in an amount to be determined at trial;

    c. statutory damages as provided by 15 U.S.C. § 1640; and

    d. costs, disbursements, and reasonable attorneys' fees.

25. By the foregoing acts, Defendants concealed the true cost of credit to Yanki, defeating the purpose of TILA, and damaging Yanki. Had she been appropriately informed, Yanki could have sought other sources of credit or negotiated different terms, but she was unable to do so by virtue of the conduct of Defendants, for which Defendants are now responsible.

26. By reason of the aforesaid violations of TILA and Regulation Z, Defendants are liable to Yanki in the amount of twice the finance charge, actual damages to be established at trial, and attorneys' fees and costs, in accordance with 15 U.S.C. § 1640.

## COUNT TWO
### (CONSPIRACY TO COMMIT FRAUD)

27. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

28. Plaintiff is the victim of fraud perpetrated by Defendants. The scheme consisted of predatory lending and equity stripping and included an intentionally misstated mortgage application.

29. Defendants fraudulently and knowingly misrepresented and omitted material information before, during, and after the Closing. In so doing, these

8

Defendants knowingly took advantage of Plaintiff's lack of financial sophistication to induce Plaintiff to enter into the patently unconscionable and illegal Mortgage for their own pecuniary gain.

30. Defendants induced Plaintiff to enter into the Mortgage by misrepresenting to her that Defendants would lower her monthly payment and interest rate. Defendants claimed to have a special mortgage product for borrowers with excellent credit scores and a reliable payment history. This special product had a significantly reduced interest rate, and was only made available to those that needed a large mortgage who based on their credit scores and payment histories have shown that they have the ability to pay the required monthly payment.

31. Defendants promised Yanki they would reduce her monthly payment by $829 from her prior loan. Defendants told Yanki that her interest rate would be 1% and that her monthly payment would be $3,000.00 and she could "cash out" $20,000.00. No one ever told Yanki that her interest rate was adjustable. If she had known it was an adjustable rate mortgage, she would never have refinanced. The main reason why Yanki sought to refinance her second mortgage was to get out of an adjustable rate mortgage and into a fixed rate mortgage. The interest rate on the Mortgage has since increased to 8%. Yanki's initial monthly payment of principal, interest, taxes and insurance was $3,322.90. Her monthly payment has since increased to $7,692.69!

32. In the Fall of 2007, Yanki made a complaint about the conduct of the Defendants to the Banking Department. In Fairfield's Response Letter, Fairfield implied that Yanki had to be sophisticated because she "was earning close to 200,000.00 per year in base salary alone." After reviewing Fairfield's Response Letter, Yanki realized that the Uniform Residential Loan Application completed by Micalla Nunes, an employee of Defendant Fairfield, inflated her annual income to $204,000.00 or $17,000.00 per month. Based on the information provided by

9

Yanki, Defendant Fairfield knew or should have known that Yanki's annual income was $75,000.00 or $6,250.00 per month.

33. Defendants fraudulently and knowingly induced Plaintiff to enter into the Mortgage based on the value of the Property rather than on Plaintiff's ability to repay.

34. Defendants fraudulently and knowingly induced Plaintiff to enter into the Mortgage by failing to provide Plaintiff with material information concerning the Mortgage including:

    a. notice of her right to rescind the transaction;

    b. disclosures pursuant to federal law; and

    c. information regarding the consequences if Plaintiff could not make the monthly payments.

35. This type of fraud is more commonly referred to as equity-stripping. As noted by the Director of the Federal Trade Commission's Bureau of Consumer Protection before the Senate Special Committee on Aging on Home Equity Lending Abuses in the Subprime Mortgage Industry:

> As a general rule, loans made to individuals who do not have the income to repay such loans usually are designed to fail; they frequently result in the lender acquiring the borrower's home equity. The borrower is likely to default, and then ultimately lose her home through foreclosure or by signing over the deed to the lender in lieu of foreclosure. Such a scheme is particularly damaging because these vulnerable borrowers often have no significant assets except the equity in their homes.

36. Plaintiff suffered serious damages resulting from Defendants' fraudulent acts. As a result, the Mortgage should be declared null and void, the security interest created by the Mortgage should be terminated, and the lien against the Property should be declared null and void.

37. In addition, the Defendants with respect to this cause of action are liable to Plaintiff for:

   a. actual damages;

   b. punitive damages; and

   c. costs, disbursements, and reasonable attorneys' fees.

## COUNT THREE
## (RECOUPMENT)

38. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

39. Defendants acted in contravention of TILA and Regulation Z in the following particulars, including, but not limited to (each and all of which may be asserted now defensively in recoupment by Yanki as a result of this suit):

(a) No pre-disclosures were given prior to Closing;

(b) No pre-disclosures of yield spread premium were given;

(c) The Amount Financed in the Truth in Lending Disclosure statement was understated;

(d) The Annual Percentage Rate in the Truth in Lending Disclosure statement was overstated;

(e) No final Truth in Lending Disclosure statement was provided;

(f) Yanki did not receive two of the Notice of Right to Cancel documents;

(g) Unjust enrichment;

(h) Illegal kickback to Defendant Shaw due to the unreasonableness of the Yield Spread Premium;

(i) Defendant Shaw received an unreasonable broker's fee at Closing; and

(j) Plaintiff did not receive a copy either the Note or Mortgage.

40. By the foregoing acts, Defendants concealed the true cost of credit to Yanki, defeating the purpose of TILA, and damaging Yanki. Had she been appropriately informed, Yanki could have sought other sources of credit or negotiated different terms, but she was unable to do so by virtue of the conduct of Defendants, for which Defendants are now responsible.

41. By reason of the aforesaid violations of the Act and Regulation Z, Defendants are liable to Yanki in the amount of twice the finance charge, actual damages to be established at trial, and attorneys' fees and costs, in accordance with 15 U.S.C. § 1640.

## COUNT FOUR
### (UNJUST ENRICHMENT)

42. The allegations in the foregoing paragraphs are repeated and realleged as if fully set forth herein.

43. Defendant Fairfield paid Defendant Shaw yield spread premium of $46,800.00. Neither Defendant Fairfield nor Defendant Shaw disclosed said yield spread premium to Yanki prior to closing.

44. Yanki did not receive any benefit for the yield spread premium paid and as a result Yanki is paying a high rate of interest and higher payments than she contracted to pay.

45. Defendant Shaw has retained the yield spread premium paid that was not bargained for by Yanki. Defendant Shaw has received the benefit and Defendant Shaw has retained the benefit, thereby damaging Yanki.

## **DEMAND FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment and relief against Defendants as follows:

    a. rescission of the Mortgage;

    b. an injunction precluding Defendants, or any of them, from enforcing Plaintiff's obligations under Mortgage;

    c. a declaration that the Mortgage is void and unenforceable;

    d. actual and statutory damages in an amount to be proven at trial;

    e. Order the return to Yanki of any money or property given by her to anyone in connection with the transaction;

    f. Order that the right to retain proceeds vests in Yanki;

    g. treble and/or punitive damages to the extent allowable by law;

    h. costs, disbursements and reasonable attorneys' fees as provided by 15 U.S.C. §§ 1640(a);

    i. Award pre-judgment and post-judgment interest as allowed by law;

    j. and such other legal and equitable relief as this Court may deem just and proper including, but not limited to, enjoining Defendants from foreclosing upon or asserting any and all claims to any estate, interest, or easement in, or lien or encumbrance of any kind on the Property.

Dated: New York, New York
July 10, 2008

**ROBERT E. BROWN, P.C.**

By: _/s/_____
**ROBERT E. BROWN, ESQ.**
(RB 5924)
30 Vesey Street, 15th Floor
New York, New York 10007
(212) 766-9779
*Attorney for Plaintiff*

Dated: New York, New York
July 10, 2008

**ROBERT E. BROWN, P.C.**

By: _____
**ROBERT E. BROWN, ESQ.**
(RB 5924)
30 Vesey Street, 15th Floor
New York, New York 10007
(212) 766-9779
*Attorney for Plaintiff*
