UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
YANKI TSHERING,

Plaintiff,

v.

FAIRFIELD FINANCIAL MORTGAGE GROUP, INC., and SHAW MORTGAGE GROUP, INC.,

Defendant.
-------------------------------------------------X

08 CV 2777 (SJ) (RML)

MEMORANDUM AND ORDER

A P P E A R A N C E S

LAW OFFICES OF ROBERT E. BROWN
44 Wall Street, 12th Floor
New York, NY 10005
By: Robert E. Brown
*Attorney for Plaintiff*

TOMPKINS, MCGUIRE, WACHENFELD & BARRY LLP
FOUR GATEWAY CENTER
100 Mulberry Street
Newark, NJ 07102
By: William Graig Sandelands
*Attorney for Proposed Intervenors Mortgage Electronic Registration Systems, Inc. and Deutsche Bank Trust Company Americas and Aurora Loan Services, LLC*

**JOHNSON, Senior District Judge:**

On July 21, 2006, Plaintiff Yanki Tshering ("Plaintiff" or "Tshering") refinanced her Brooklyn, New York property through a $960,000 mortgage loan

from Fairfield Financial Mortgage Group, Inc. ("Fairfield Financial" or "Fairfield"). In her complaint, Plaintiff alleges that a Fairfield officer advertised the loan at issue as being fixed-rate with an interest rate of 1%. Plaintiff also alleges that the officer assured her that he could lower her monthly mortgage payments by $829.00 if she refinanced both of her then-existing mortgages with Fairfield Financial. However, Plaintiff claims that the 1% interest rate was a "teaser," because her monthly rate soon rose to 8%, causing her monthly loan payment to balloon to $7,692.69, an amount in excess of her monthly income.

The terms of Plaintiff's loan contained a note provision that allowed Fairfield to transfer the loan's financial interest to a third party. According to Mortgage Electronic Registration Services ("MERS"), Deutsche Bank Trust Company Americas ("Deutsche Bank") and Aurora Loan Services LLC ("Aurora") (collectively "Proposed Intervenors" or the "Intervenors"), Plaintiff's mortgage was securitized and transferred pursuant to a July 1, 2006 Series Supplement, giving the financial rights to Deutsche Bank through a pass-through mortgage-backed security. The Proposed Intervenors also assert that in addition to Deutsche Bank and MERS becoming successors to Fairfield's interest as a lender, Homecomings Financial, LLC ("Homecomings") became Plaintiff's loan servicer, effective September 1, 2006. The Intervenors submit two letters addressed to Tshering informing her of changes in her loan servicer. The first is dated September 29, 2006, and informs Tshering that her loan was transferred to Homecomings, and

instructs her to remit payment to a new address accordingly. The second is dated March 18, 2008, and informs Tshering of another transfer, this time to Aurora Loan Services. Again, she was provided with a new address to which to send her mortgage payments, which she did.

On July 11, 2008, Plaintiff filed the instant complaint ("Complaint"), pursuant to the Truth in Lending Act, 15 U.S.C. 1601, et seq., ("TILA") and related state law. Plaintiff sought to have the mortgage declared void and unenforceable based on Fairfield's failure to make various disclosures during the closing process. She named Fairfield and Shaw Mortgage Group, Inc. ("Shaw"), Plaintiff's mortgage broker, as defendants. Neither party appeared.

On May 22, 2009, Plaintiff moved for a default judgment against Fairfield and Shaw. The motion was referred to Judge Levy for a Report and Recommendation ("Report"). The Report issued on February 1, 2010. Fairfield and Shaw neither appeared nor filed any documents in their defense. Judge Levy recommended denying Tshering's prayer for rescission, finding that TILA's right to rescind credit transactions does not extend to residential mortgage transactions. However, Judge Levy determined that the Complaint stated a cause of action for fraud under New York State Law, and accordingly declared the mortgage null and void. (Dkt. No. 14.)

The Report was adopted by this Court on February 19, 2010. On May 17, 2010, Aurora received a letter from Plaintiff notifying Aurora that the mortgage

was declared void. Plaintiff ceased making payments to Aurora after July 2010. The Proposed Intervenors retained counsel and moved to intervene as a matter of right, pursuant to Federal Rule of Civil Procedure ("Rule") 24(a); and for relief from a final judgment pursuant to Rule 60(b).

## DISCUSSION

### I. *Rule 24(a)*

Intervention is a procedural device which facilitates courts' desire to resolve related issues in a single case, while simultaneously functioning as a gatekeeper protecting against overly complex and burdensome litigation. See United States v. Pitney Bowes, Inc., 25 F.3d 66, 69 (2d Cir. 1994). To intervene as a matter of right, a party must: (1) file a timely motion; (2) assert an interest relating to the property or transaction that is the subject of the action; (3) be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest;" and (4) have those interests insufficiently accounted for in the action. Fed. R. Civ. P. 24(a). Courts are not to assess the adequacy of the individual criteria in isolation, but together. See United States v. Hooker Chemicals & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984) ("Rule 24(a)(2) is a nontechnical directive to courts that provides the flexibility necessary 'to cover the multitude of possible intervention situations.'") (citing Restor-A-Dent Dental

Labs., Inc.v. Certified Alloy Prods., Inc., 725 F.2d 871, 875 (2d Cir. 1984)). Moreover, it is "'an obvious and important truth' that in applying Rule 24(a)(2) courts should 'not make a fortress of the dictionary' but rather should 'apply the rule with thoughtful consideration of the objectives it is intended to serve.'" Hooker Chemicals, 749 F.2d at 983 (citing 7A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1904 at 474 (3d ed.) (1972)). It is through this lens that the motion will be analyzed.

A. *Timeliness*

"Among the factors to be taken into account to determine whether a motion to intervene is timely are: (a) the length of time the applicant knew or should have known of his interest before making the motion; (b) prejudice to existing parties resulting from the applicant's delay; (c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances militating for or against a finding of timeliness." United States v. New York, 820 F.2d 554, 557 (2d Cir. 1987) (collecting cases).

The Intervenors motion was filed three months after Plaintiff informed Aurora that the mortgage was invalidated. This Court does not find that this delay causes the motion to be untimely. See id. ("It is incorrect to adopt a per se rule focused solely" on lapse of time). Prejudice to the Intervenors is obvious – the case involves a $960,000 mortgage. Plaintiff has failed to allege any prejudice

bestowed upon her. On the contrary, she has been freed from what was once an obligation to pay a substantial amount to Aurora. Finally, the Court finds no unusual circumstances on the issue of timeliness. This factor has been met.

B. *Remaining Rule 24(a) Factors*

As discussed above, the Intervenors also have the burden of demonstrating an interest in the underlying action, not otherwise protected, that will be impaired from an unfavorable disposition. See Mortg. Lenders Network, Inc. v. Rosenblum, 218 F.R.D. 381, 384 (E.D.N.Y. 2003). This interest must be "direct, substantial, and legally protectable." Wash. Elec. Corp., v. Massachusetts Mun. Wholesale Elec. Co., 922 F.2d 92, 97 (2d Cir. 1990) (holding that a would-be intervenor's purported interest was based upon a double contingency, and thus could not be described as direct or substantial.); see also Brennan v. New York City Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001). Conversely, "an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." United States v. Peoples Benefit Life Ins. Co., 271 F.3d 411, 415 (2d Cir. 2001) (citation omitted).

Here, Intervenors' interest in Plaintiff's case is both direct and legally protectable. Intervenors purport to hold various stakes in plaintiff's loan from the securitization and sale of the underlying asset-backed security. Specifically,

Deutsche Bank claims to be the successor to Fairfield Financial's interest as the property's Note holder through a July 1, 2006 sale-and-transfer. Aurora is the current servicing institution for plaintiff's loan, and thus in possession of an interest in both monitoring plaintiff's loan and collecting periodic payments. Finally, MERS facilitated the collection and distribution of income from securitized assets, such as Plaintiff's loan.

All three of these interests are directly affected by this suit. If the default judgment stands, Intervenors stand to lose their legal interests in Plaintiff's mortgage along with incidental cash-flows. Further, Intervenors' interests cannot be protected by the current defendants to the suit because there is no one representing either named defendant.

In sum, the court concludes that Intervenors have a direct interest in plaintiff's suit that should not be thwarted by the complexities of the securitization process. Peoples Benefit Life Ins. Co., 271 F.3d at 417. For these reasons, Intervenors' Rule 24(a)(2) motion is granted.

II. *Intervenors' Rule 60(b) Motion for Relief from a Judgment or Order*

Pursuant to Rule 60(b), a federal court may relieve a party from a final judgment under a limited set of circumstances, including (a) a mistake,

inadvertence, surprise, or excusable neglect; (b) newly discovered evidence; (c) fraud; (d) a void judgment; (e) a judgment that has been satisfied; or (f) any other reason that the court, in its discretion, concludes is justified. The movant's motion must be made within a "reasonable time-frame," and for claims under (a),(b), and (c), no more than a year after the entry of judgment.

A district court's determination on a Rule 60(b) motion must be guided by three principle factors: (a) whether the movant's default was willful; (b) whether the movant possesses a meritorious defense; and (c) whether, and to what extent, vacating the default judgment will cause the non-defaulting party prejudice. See, e.g., New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005); Am Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996); Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983). The Second Circuit has emphasized its preference that litigation disputes be resolved on the merits. See Hawthorne v. Citicorp Data Systems, Inc., 219 F.R.D. 47, 49 (E.D.N.Y. 2003) (quoting Cody v. Mello, 59 F.3d 13, 15 (2d Cir. 1995)). Accordingly, any doubts the court may have must be resolved in favor of the moving party. Hawthorne, 219 F.R.D. at 49.

Tshering opposes the instant motion, but does not claim that vacating the judgment will cause prejudice. Therefore, the analysis below addresses whether the Intervenors acted willfully and have meritorious defenses. For the reasons

discussed below, the Intervenors are entitled to defend their respective interests in the instant suit.

A. *Willfulness*

A Rule 60(b) motion cannot stand if the default judgment was due to a strategic decision on the movant's part. See Am. Alliance, 92 F.3d at 60. Willfulness encompasses conduct that is deliberate, or egregious, or is carried out in bad faith. See Hernandez v. La Cazuela De Mari Rest., Inc., 538 F. Supp. 2d 528, 532 (E.D.N.Y. 2007). Mere negligence is insufficient for a determination of willfulness; "although the degree of negligence in precipitating a default is a relevant factor to be considered." Green, 420 F.3d at 108 (citations omitted).

Here, the evidence does not support the conclusion that Intervenors willfully defaulted. Intervenors lacked notice of the July 11, 2008 complaint because Tshering neither included the Intervenors in her complaint, nor stopped making timely periodic payments on her underlying mortgage. Intervenors' interest in the present suit rests in part on the periodic cash-flows from her securitized mortgage. Because she continued to make payments, keeping the cash-flow unaffected, the Intervenors were not clued in to the fact that the validity of the mortgage was in jeopardy. In particular, it is telling that Plaintiff kept the existence of the suit from Aurora until the judgment had been declared void, whereupon she saw fit to notify

Aurora of same. It takes no sophistication in the intricacies of securitization to know that the recipient of one's payments would be interested in a suit threatening to discontinue those payments. For these reasons, Intervenors' default was not the product of a strategic plan to circumvent or delay the proceedings; rather, it was the product of surprise and mistake, consistent with Rule 60(b)(1).

B. *Meritorious Defense*

The second element of a Rule 60(b) claim requires the court to analyze whether the Intervenors have provided a sufficiently meritorious defense upon intervention. In advancing their claim, the Rule 60(b) Intervenors need not establish their defense conclusively; however they must "present evidence of facts, that if proven at trial, would constitute a complete defense." Green, 420 F.3d at 109 (citation and internal quotation marks omitted). Here, the Intervenors claim, among other things, the defense of holder in due course, and equitable subrogation. For the reasons below, the court concludes that the Intervenors have proffered a meritorious defense.

Intervenors' claim concerning holder in due course is predicated on the assertion that Deutsche Bank, as a holder in due course, is not is not liable for Plaintiff's allegations of misrepresentation during the closing of her loan. Intervenors contend that claims against a holder in due course are limited to those

that flow from the note itself, and not the underlying mortgage. Under New York law, a purchaser of a negotiable instrument becomes a holder in due course if he "takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." A.I. Trade Fin., Inc. v. Laminaciones De Lesaca, S.A., 41 F.3d 830, 835 (2d Cir. 1994) (citing N.Y.U.C.C. § 3-302(1)). Further, Section 3-305, in relevant part, provides that a holder in due course "takes the instrument free from all claims to it on the part of any person; and all defenses of any party to the instrument with whom the holder has not dealt." Id. (citing N.Y.U.C.C. §§ 3-305(1) and (2)).

Intervenors have provided a sufficient evidentiary basis to establish that Deutsche Bank is a holder in due course under N.Y.U.C.C. § 3-302(1). Intervenors contend that the Note underlying Tshering's mortgage was transferred from Fairfield Financial to Deutsche Bank, with consideration, as of July 1, 2006. As such, Intervenors have sufficiently articulated the argument that Tshering's allegations of fraud, misrepresentation, among other claims, occurred before the Note transfer, and thus do not attach onto a holder in due course.

Intervenors also claim that the doctrine of equitable subrogation should be invoked to prevent unjust enrichment on the part of Plaintiff. Under equitable subrogation, a party is entitled to be subrogated to the position of the obligee (or

lien-holder), when the property of one party is used to discharge a lien owed by another, under such circumstances that cause unjust enrichment. See RESTATEMENT (FIRST) OF RESTITUTION § 162 (2012). The doctrine of equitable subrogation in the context of mortgage liens is well-supported under New York law. See Wagner v. Maenza, 223 A.D.2d 640, 641 (N.Y. App. Div. 1996); Ziedel v. Dunne, 215 A.D.2d 472, 473 (N.Y. App. Div. 1995) (holding that equitable subrogation was appropriate due to documentary evidence that defendant bank had caused all prior mortgages of which it had notice to be satisfied).

Here, Intervenors have presented evidence that a substantial portion of the refinanced mortgage loan at issue went to pay off prior mortgage liens on Plaintiff's property. As such, Intervenors have a potentially meritorious claim that they possess liens on Plaintiffs property, and that a default judgment would cause an inequitable windfall in favor of Plaintiff.

## CONCLUSION

For the reasons discussed above, the court grants Intervenors' Rule 24(a) motion to intervene, and Intervenors' Rule 60(b) motion for relief from a judgment. The parties shall contact Judge Levy's chambers in furtherance of consummating discovery.

SO ORDERED.

Dated: July 11, 2013
Brooklyn, New York

_____________/s_____________________
Sterling Johnson, Jr., U.S.D.J.